## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br><br>               Plaintiff,<br><br>      v.<br><br>WOODWARD PROPERTIES;<br>WOODWARD PROPERTIES, INC.;<br>THE WESTOVER COMPANIES;<br>WESTOVER COMPANIES;<br>WESTOVER PROPERTY<br>MANAGEMENT COMPANY, LP;<br>STAR PARTNERS, LP; 151 SOUTH<br>BISHOP, INC.; WP BISHOP NEWCO,<br>LLC,<br><br>               Defendants. | Case No. _____ |

## COMPLAINT

And now Plaintiff, John Doe, by and through undersigned counsel, files this Complaint and avers as follows:

## PARTIES

1.      Plaintiff, John Doe, age 36, is a citizen of the Commonwealth of Pennsylvania residing at ███████████████████████████████, in West Chester, Pennsylvania.  John Doe is a transgender man and Latino/x person of color.  The pronouns "he," "him," and "his," will be used throughout the Complaint to identify Doe.

2.      Defendants, Woodward Properties and/or Woodward Properties, Inc., have a registered office address and principal place of business at 7600 West Chester Pike, Second Floor, Philadelphia, PA 19082; and/or at 4920 City Ave., Ste. 200, Philadelphia, PA 19131-1444.  At all times relevant hereto, upon information and belief, Defendants, Woodward

Properties and/or Woodward Properties, Inc., purchased The Westover Companies, Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; and/or WP Bishop Newco, LLC.  Woodward Properties is a property management company which is in the business of selling and leasing rental apartments.  Woodward Properties and/or Woodward Properties, Inc., was involved in the discriminatory decision-making with respect to Doe's employment, including but not limited to terminating/discharging and/or failing to hire and/or rehire Doe.

3.      Defendants, The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; and/or WP Bishop Newco, LLC, employed Plaintiff.  These Defendants have a registered office address and/or principal place of business at 649 South Henderson Road, King of Prussia, PA 19406.  Defendant, The Westover Companies, is also a property management company which is in the business of selling and leasing rental apartments.

## JURISDICTION & VENUE

4.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

5.      Venue is proper because, at all times relevant hereto, the Plaintiff was employed, the work conduct occurred, and/or the unlawful employment practices were alleged to have been committed, within this District, among other places, including at 649 South Henderson Road, King of Prussia, PA, 19406.

6.      Doe filed timely Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), received Notices of Right-to-Sue attached hereto collectively as Exhibit "A," and has satisfied all administrative prerequisites to bringing suit.

## CLAIMS FOR RELIEF

### COUNT I:
### HARASSMENT BASED ON SEX – GENDER IDENTITY, GENDER EXPRESSION, GENDER NON-CONFORMITY, AND/OR GENDER STEREOTYPING – IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.
### (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

7.      Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

8.      In September 2017, the Defendants hired Doe as a Maintenance Technician or maintenance worker.  The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC; which, upon information and belief, were assumed by Woodward Properties, Inc., and Woodward Companies, Inc.

9.      Doe worked as a Maintenance Technician, and was employed to work at various properties owned by the Defendants, including The Villages of Westbrook and Bishop Hill Apartments.

10.      Doe identifies as a transgender male.  Doe is Latino/x and a trans person of color.

11.      Doe was misgendered with "she," "her," and his dead name, on a frequent basis by supervisors and co-employees, who did not respect his gender identity, throughout his employment.

12.      Even after Doe rebuffed and corrected his name and pronouns, the harassment and misgendering still did not stop, but continued unrectified.

13.      Mary Last Name Unknown ("LNU"), Property Manager, frequently misgendered Doe with "she" and "her."

3

14.     Doe recollects occasions where Mary LNU would point her finger directly at Doe, and identify and single him out, when referring to Doe as "she," which Doe found to be particularly offensive on those occasions.

15.     Mr. Woodward, President, in a formal meeting with Doe and Mr. Woodward to discuss Doe's employment, misgendered Doe with his dead name, after Doe had already told Mr. Woodward he had transitioned.

16.     Doe also recalls being referred to as a "homo fag" and a "homo" during his employment.  Doe identifies as a transgender male, and not as gay.

17.     Doe heard a co-employee, Mr. Anthony Sebastiano, refer to another co-employee, Tom Last Name Unknown ("LNU"), as a "homo bitch."

18.     Doe reported the harassment and discrimination to Mary LNU, Property Manager, who did not take prompt and appropriate remedial action.

19.     Doe's home was broken into during his employment on account of discrimination and retaliation.  Doe lives on the property, and pays rent to his former employer, he did so at the time of the subject incidents, and therefore Defendants are not only liable for employment discrimination, but also for housing discrimination against Doe as described more fully herein.

20.     Doe believed a co-employee, Mr. Anthony Sebastiano, was responsible for the break-in which Doe reported to the Defendants.

21.     Throughout Doe's employment, when Doe had to be identified by name in writing, Doe was often identified using his dead name, or a female name.

22.     Doe was also identified in writing, on some other occasions, including on work orders and in a memo, with just the first letter of his first name, which is not preferred and is stigmatizing treatment, and also constitutes disparate treatment in that this is not the way other

similarly-situated employees who are cisgender are referred to by others on a daily basis at the company.

23.     Doe's work badge was also modified to include just the letter of his first name, which is not preferred, is stigmatizing, and also constitutes disparate treatment in that this is not what other similarly-situated employees who are cisgender are required to wear, or how they are otherwise identified, on a daily basis at the company.

24.     After Doe corrected his name and pronouns to his direct supervisor/manager, Robert Last Name Unknown ("LNU"), Supervisory Maintenance Technician, the supervisor would repeatedly ostracize and subject Doe to aversion by refusing to deal with Doe directly. Doe would try to reach the supervisor via walkie-talkie or cell phone, but could not.  The fact that Doe could not reach Robert LNU, the supervisor, made it more difficult for Doe to do his job as a maintenance technician.

25.     Doe experienced stigma and isolation from other co-employees including by being assigned to work far apart and separated from others such as on the topmost floors.

26.     Doe was also forced to work alone with Mr. Sebastiano, and apart from any of the employees besides Mr. Sebastiano, on multiple projects, despite Mr. Sebastiano being the harasser whom Doe accused of harassment including the break-in of Doe's residence.

27.     On November 12, 2018, Doe engaged in protected conduct/activity by lodging a complaint verbally and in writing to Human Resources.  In the letter Doe stated, "I don't feel safe here," as well as the following:

> *The supervisory maintenance technician, Robert, has said to me, 'You make me*
>
> *uncomfortable.'  When I asked him what do I do that makes him uncomfortable, he*

*said, 'Because I have to watch what I say,' and, 'I've never had to deal with a transgender person before.' I've found that Robert will not deal with me face-to-face directly. I cannot reach him by walkie-talkie or when I call his cell. It makes it more difficult for me to actually do my job when my supervisor tries to actively avoid me or won't work with me directly because he feels uncomfortable that I'm trans. I also feel like Robert sets the example from the top down, so as a result, other staff repeatedly misgender me with 'she' and 'her' even though I correct them over and over."*

28.    The misgendering did not stop, but instead continued unabated including in or around April, May, and June 2019.

29.    Doe further alleges that Jody Pierson, Regional Manager, also misgendered Doe, including with "she" and "her," even when referring to Doe by his preferred name, which was embarrassing for Doe.

30.    In or around June 4, 2019, Doe learned he was being discharged from employment by Defendants.

31.    The Defendants further failed or refused to hire or rehire Doe to numerous positions, for which Doe was qualified, and to which Doe applied and/or expressed interest in thereafter. The Defendants rejected Doe on account of discrimination against him due to his gender identity, and/or in retaliation for his rebuffs of misgendering, harassment, discrimination, and complaints to supervisors/managers and the Human Resources ("HR") department about the same.

32.    Defendants repeatedly posted positions seeking applicants with Doe's qualifications or similar.

33.     Defendants even posted an open position for Maintenance Technician at The Westover Companies.

34.     Defendants repeatedly filled positions including with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms. Sarah Archdeacon (White/Caucasian, cisgender female), believed to have occurred in or around September 2019. Ms. Archdeacon was hired to what appears to be Doe's or a similar position.

35.     Mr. Frank Casera, Supervisor/Manager, allegedly told Doe that "they would find something," or words to that effect, but Defendants then deviated from this statement and failed or refused to hire/rehire Doe as indicated.

36.     Colleen Alicea, Property Manager, also suggested that Doe would be presented an offer of re-employment as Ms. Alicea told Doe to "just wait," or words to that effect, on multiple occasions, after Doe followed up expressing his interest in re-employment.

37.     Doe also applied for an open position in or around May 2019 and was rejected by the Defendants.

38.     Doe also expressed interest in a posted position on crew in or around May 2019 and was rejected by the Defendants.

39.     Upon information and belief, similarly-situated cisgender employees who were not as qualified as Doe, including Mr. Frank Jackson and Mr. Anthony Sebastiano, received offers to their e-mails, were permitted to transfer, were considered for, and/or were selected for other available positions, while Doe was not.  It is believed that these comparators may not even have had valid driver's licenses at the time of hire, although Doe had a valid driver's license and was ready, willing, and able to work at all times including travelling to the different properties as a Maintenance Technician.

40.    During his prior employment with the Defendants, Doe was hard-working, he worked commendably, and to the Defendants' satisfaction.  Doe was a qualified, helpful and knowledgeable Maintenance Technician, he frequently pitched in to do work for other employees, and there was no legitimate reason except discrimination and/or retaliation that Doe was discharged and not subsequently considered for rehire with the Defendants.

41.    Doe was instead provided a separation agreement by the Defendants, which he refused to sign, which explicitly states, "*Employee agrees that his employment relationship with Company has been permanently and irrevocably severed and he waives any right to future consideration for employment with the Company or any of its affiliated entities, that he will not reapply or apply for employment with the Company in any capacity and that the Company shall have no obligation, contractual or otherwise, to consider him for hire or re-hire or re-employment in the future.*"  The proposed release would have required Doe to "*acknowledge[] that the Company has not:  (i) discriminated against him in any way . . .*", and would have specifically required release of claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act, "*and any other federal, state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment, and all common-law causes of action for wrongful or retaliatory discharge*."  It is acknowledged that Defendants did refer at this point to Doe in writing according to his specific pronouns, "he," "him," and "his," where Doe is specifically referenced in the release agreement.  Doe did _not_ sign the agreement and specifically rejected the agreement.  The full agreement is attached as Exhibit "B" to the Plaintiff's Complaint.

8

42.     Doe is not over forty (40) years of age, and is therefore not covered by the Older Workers' Benefit Protection Act ("OWBPA") or the Age Discrimination in Employment Act ("ADEA").  The agreement was given to Doe by the Defendants because they knew that they harassed, discriminated against, and retaliated against Doe on account of his transgender status while he was working for the Defendants' companies.

43.     Looking with specificity at the language of the proposed Settlement Agreement and Release, and considering the totality of the circumstances in the instant case, Defendants also did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

44.     The Defendants failed or refused to adequately adopt fully-LGBT inclusive policies of non-discrimination and anti-harassment.  Defendants adopted exclusionary policies. The Defendants refused to protect members of the LGBT community including Doe, and/or other employees and tenants/residents, from discrimination and harassment, to wit:

a.     At all relevant times, The "Westover Companies/Christiana Properties Employee Handbook," provided to Doe during his employment, included language about "standards of conduct" and "offensive behavior" on the basis of "race, color, creed, religion, national origin, sex, criminal record, marital status, disability, sexual orientation or age," but does not include "gender identity" or "gender expression," and therefore discriminates against transgender individuals, and is not inclusive of transgender individuals.  <u>See</u> Excerpts at Exhibit "C," ECF No. 1-3, ECF p. 6, internal Bates number 291.

b.     Not only were transgender individuals excluded from the Defendants' policy of non-discrimination and anti-harassment, but to add insult to injury, the training which was provided to Doe also excluded transgender individuals.  In training, Doe was instructed, in an incoherent manner, that transgender discrimination did not constitute sex discrimination, but that "[d]iscrimination against lesbian, gay, bisexual, or transgender (LGBT) persons may be considered sex discrimination if it is based on perceived gender or non-conformity with gender stereotypes."  This is not correct because transgender discrimination is always considered sex discrimination.  The Defendants' policies should be modified to reflect as such, and employees should be trained as such moving forward.  <u>See</u> Excerpts at Ex. "C," ECF No. 1-3, ECF pp. 10-14, internal Bates numbers 122-125.

c.     Doe was required as part of the incoherent training provided during the subject timeframe to fill in the blanks for whether discrimination or harassment is "based on perceived _____ or non-conformity with gender

_____," for which "gender," and not "sexual orientation" and/or "gender identity," was the appropriate answer for the first blank according to Defendants, despite the fact that "gender" is used later in the same sentence and immediately followed by another blank, for which "sexual orientation" and/or "gender identity" was again not the appropriate answer according to Defendants. See id.  The training materials – all relevant questions and answers – should be revised accordingly, so there is no confusion, and they should state unequivocally, "Discrimination against people who are lesbian, gay, bisexual, or transgender (LGBT) is considered sex discrimination.  Discrimination against people who are LGBT is considered sex discrimination because it is based on gender or non-conformity with gender stereotypes."

d.      Transgender individuals are openly discriminated against and excluded from protection at Defendants' companies without legitimate reason.

e.      Defendants failed or refused to include Doe's specific protected class upon which he was discriminated against at Defendants' companies, which is the gravamen of the Plaintiff's Complaint, the very way in which he alleges the Defendants harmed him or caused him injury in this case.

f.      Neither can Defendants' policy of non-discrimination and anti-harassment be said to be fully-LGBT inclusive or respectful of the LGBT community at large on account of the fact that it specifically includes sexual orientation, but specifically excludes gender identity or expression, and as a result excludes and discriminates against transgender individuals including Doe.

g.      Defendants' policies are purportedly inclusive in that they purport to

protect everyone (except transgender individuals).  Defendants even explicitly

extend anti-discrimination protections and job security to those with criminal

records for whom there is no explicit federal or state protection.  Yet, for no

legitimate reason, the Defendants exclude transgender individuals whose rights

are expressly protected under federal and state law.

h.      Defendants acted intentionally and with reckless indifference to the rights

of transgender individuals including Doe.  Defendants should be required to

revise their exclusionary policies, perform appropriate LGBT sensitivity training,

and their conduct should be subject to punitive damages to deter Defendants and

other employers in the future from similar behavior.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an

amount in excess of $150,000.00, including damages for any and all back and front pay,

commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for

severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation,

embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages;

pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and

equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post

a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all

members of the LGBT community, in that it explicitly prohibits discrimination on account of

gender identity, gender expression, and gender dysphoria; a policy stating that reasonable

accommodations will be provided for individuals who suffer from gender dysphoria; is made

applicable to all employees and tenants/residents of the Defendants; annual LGBT sensitivity

training for all employees; to conspicuously post notice of the verdict in this matter; to provide a

neutral employment reference for Doe; and an apology to Doe.

**COUNT II:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON SEX – GENDER IDENTITY,**
**GENDER EXPRESSION, GENDER NON-CONFORMITY, AND/OR GENDER**
**STEREOTYPING – IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF**
**1964, 42 U.S.C. § 2000e, et seq.**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The**
**Westover Companies; Westover Companies; Westover Property Management Company,**
**LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

45.     Plaintiff hereby incorporates by reference each and every paragraph above as if

the same were set forth more fully at length herein.

46.     In or around June 4, 2019, Plaintiff learned he was being discharged from

employment with Defendants.

47.     Defendants posted an open position for Maintenance Technician at The Westover

Companies.

48.     During the subject timeframe, Defendants repeatedly filled positions including

with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms.

Sarah Archdeacon (believed to have occurred in or around September 2019).

49.     Plaintiff was instead provided a separation agreement, at the time of his discharge,

which explicitly states, "*Employee agrees that his employment relationship with Company has*

*been permanently and irrevocably severed and he waives any right to future consideration for*

*employment with the Company or any of its affiliated entities, that he will not reapply or apply*

*for employment with the Company in any capacity and that the Company shall have no*

*obligation, contractual or otherwise, to consider him for hire or re-hire or re-employment in the*

*future.*"  The proposed release would have required Plaintiff to "*acknowledge[] that the*

*Company has not:  (i) discriminated against him in any way . . .*", and would have specifically

required release of claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act, "*and any other federal, state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment, and all common-law causes of action for wrongful or retaliatory discharge.*" Doe did not sign the agreement and specifically rejected the agreement.

50.     Doe was terminated/discharged by the Defendants on account of gender identity or expression.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT III:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF**
**THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The**
**Westover Companies; Westover Companies; Westover Property Management Company,**
**LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

51.    Plaintiff hereby incorporates by reference each and every paragraph above as if

the same were set forth more fully at length herein.

52.    Defendants terminated/discharged Doe in retaliation for his opposition to

discrimination in the form of rebuffs of misgendering and harassment as described above, and

which allegations are incorporated by reference as if the same were set forth more fully at length

herein.

53.    Defendants terminated/discharged Plaintiff in retaliation for Plaintiff's opposition

to discrimination in the form of Plaintiff's complaints about discrimination and harassment,

including but not limited to Human Resources ("HR"), as described above, and which allegations

are incorporated by reference as if the same were set forth more fully at length herein.

54.    During the subject timeframe, Defendants repeatedly filled positions including

with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms.

Sarah Archdeacon (believed to have occurred in or around September 2019), who did not engage

in protected conduct/activity.

55.    Plaintiff was instead provided a separation agreement, at the time of his discharge,

which explicitly states, "*Employee agrees that his employment relationship with Company has*

*been permanently and irrevocably severed and he waives any right to future consideration for*

*employment with the Company or any of its affiliated entities, that he will not reapply or apply*

*for employment with the Company in any capacity and that the Company shall have no*

*obligation, contractual or otherwise, to consider him for hire or re-hire or re-employment in the*

*future*."  The proposed release would have required Plaintiff to "*acknowledge[] that the*

*Company has not:  (i) discriminated against him in any way . . .*", and would have specifically

required release of claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of

1991, the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act,

"*and any other federal, state or local statute or regulation regarding employment, discrimination*

*in employment, or the termination of employment, and all common-law causes of action for*

*wrongful or retaliatory discharge.*"  Doe did not sign the agreement and specifically rejected the

agreement.

56.     Mr. Jackson and Mr. Sebastiano were provided re-employment, did not engage in

protected conduct/activity, and Mr. Sebastiano was a specific harasser identified by Doe in his

complaint by name.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an

amount in excess of $150,000.00, including damages for any and all back and front pay,

commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for

severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation,

embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages;

pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and

equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post

a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all

members of the LGBT community, in that it explicitly prohibits discrimination on account of

gender identity, gender expression, and gender dysphoria; a policy stating that reasonable

accommodations will be provided for individuals who suffer from gender dysphoria; annual

LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT IV:**
**FAILURE-TO-HIRE AND/OR REHIRE BASED ON SEX – GENDER IDENTITY, GENDER EXPRESSION, AND/OR GENDER STEREOTYPING – IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

57.     Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

58.     Defendants further failed and/or refused to hire or rehire Plaintiff to numerous positions to which Plaintiff applied and/or expressed interest, on account of gender identity, gender expression, and/or gender stereotyping, to wit:

a.     Defendants repeatedly posted positions seeking applicants with Plaintiff's qualifications.

b.     Defendants even posted an open position for Maintenance Technician at The Westover Companies.

c.     During the subject timeframe, Defendants repeatedly filled positions including with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms. Sarah Archdeacon (believed to have occurred in or around September 2019).

d.     Mr. Frank Casera, Supervisor/Manager, allegedly told Plaintiff that "they would find something," or words to that effect, but Respondents failed or refused to hire or rehire Plaintiff as they had indicated.

e.      Colleen Alicea, Property Manager, also suggested that Plaintiff would be presented an offer as Ms. Alicea told Plaintiff to "just wait," or words to that effect, on multiple occasions, after Plaintiff followed up by expressing his interest in employment.

f.      Doe also applied for an open position in or around May 2019 and was rejected by the Defendants.

g.      Doe also expressed interest in a posted position on crew in or around May 2019 and was rejected by the Defendants.

h.      Upon information and belief, similarly-situated cisgender employees who were not as qualified as Doe, including Mr. Frank Jackson and Mr. Anthony Sebastiano, received offers to their e-mails, were permitted to transfer, were considered for, and/or were selected for other available positions, while Doe was not.  It is believed that these comparators may not even have had valid driver's licenses at the time of hire, although Doe had a valid driver's license and was ready, willing, and able to work at all times including travelling to the different properties as a Maintenance Technician.

i.      Plaintiff was instead provided a separation agreement, at the time of his discharge, which explicitly states, "*Employee agrees that his employment relationship with Company has been permanently and irrevocably severed and he waives any right to future consideration for employment with the Company or any of its affiliated entities, that he will not reapply or apply for employment with the Company in any capacity and that the Company shall have no obligation, contractual or otherwise, to consider him for hire or re-hire or re-employment in the future*."  The proposed release would have required Plaintiff to "*acknowledge[] that the Company has not:  (i) discriminated against him in any way . . .*", and would have specifically required release of claims under Title

VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act, "*and any other federal, state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment, and all common-law causes of action for wrongful or retaliatory discharge.*"  Doe did not sign the agreement, and specifically rejected the agreement.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT V:**
**FAILURE-TO-HIRE AND/OR REHIRE ON ACCOUNT OF RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

59.     Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

60.     Defendants failed to hire and/or rehire the Plaintiff on account of retaliation, including his rebuffs of harassment, and complaints about the same to management and the HR department.  The facts which support this are as follows:

       a.      Defendants repeatedly posted positions seeking applicants with Plaintiff's qualifications.

       b.      Defendants even posted an open position for Maintenance Technician at The Westover Companies.

       c.      During the subject timeframe, Defendants repeatedly filled positions including with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms. Sarah Archdeacon (believed to have occurred in or around September 2019), who did not engage in protected conduct/activity.

       d.      Mr. Frank Casera, Supervisor/Manager, allegedly told Plaintiff that "they would find something," or words to that effect, but Respondents failed or refused to hire or rehire Plaintiff as they had indicated.

       e.      Colleen Alicea, Property Manager, also suggested that Plaintiff would be presented an offer as Ms. Alicea told Plaintiff to "just wait," or words to that effect, on multiple occasions, after Plaintiff followed up by expressing his interest in employment.

       f.      Doe also applied for an open position in or around May 2019 and was rejected by the Defendants.

g.      Doe also expressed interest in a posted position on crew in or around May 2019 and was rejected by the Defendants.

h.      Upon information and belief, similarly-situated cisgender employees who were not as qualified as Doe, including Mr. Frank Jackson and Mr. Anthony Sebastiano, received offers to their e-mails, were permitted to transfer, were considered for, and/or were selected for other available positions, while Doe was not.  It is believed that these comparators may not even have had valid driver's licenses at the time of hire, although Doe had a valid driver's license and was ready, willing, and able to work at all times including travelling to the different properties as a Maintenance Technician.  Mr. Jackson and Mr. Sebastiano did not engage in protected conduct/activity.  Mr. Sebastiano was a specific harasser identified by Doe in his complaint by name.

i.      Plaintiff was instead provided a separation agreement, at the time of his discharge, which explicitly states, "*Employee agrees that his employment relationship with Company has been permanently and irrevocably severed and he waives any right to future consideration for employment with the Company or any of its affiliated entities, that he will not reapply or apply for employment with the Company in any capacity and that the Company shall have no obligation, contractual or otherwise, to consider him for hire or re-hire or re-employment in the future*."  The proposed release would have required Plaintiff to "*acknowledge[] that the Company has not:  (i) discriminated against him in any way . . .*", and would have specifically required release of claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with

Disabilities Act ("ADA"), the Pennsylvania Human Relations Act, "*and any other federal, state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment, and all common-law causes of action for wrongful or retaliatory discharge.*"  Doe did not sign the agreement, and specifically rejected the agreement.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT VI:**
**RETALIATORY HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

61.     Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

62. The Defendants subjected Doe to retaliatory harassment, in the form of supervisory harassment and a hostile work environment, in retaliation for Doe's protected conduct/activity.

63. Defendants also subjected Doe to tangible employment action in the form of dismissal, failure-to-rehire, and/or failure-to-hire.

64. Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights. Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them. The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights. The Agreement was rejected by Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post

a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all

members of the LGBT community, in that it explicitly prohibits discrimination on account of

gender identity, gender expression, and gender dysphoria; a policy stating that reasonable

accommodations will be provided for individuals who suffer from gender dysphoria; annual

LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this

matter; to provide a neutral employment reference for Doe; and an apology to Doe.

## COUNT VII:
### DIRECT RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

65.     Plaintiff hereby incorporates by reference each and every paragraph above as if

the same were set forth more fully at length herein.

66.     The Defendants subjected Doe to direct retaliation for Doe's protected

conduct/activity.

67.     Defendants subjected Doe to direct retaliation from supervisors and co-employees

while still employed which was materially adverse.

68.     Defendants subjected Doe to direct retaliation by discharging him, failing to

rehire him, and/or failing to hire him, in retaliation for his protected conduct/activity.

69.     Defendants did not agree to renew Doe as a tenant/resident on the same terms and

conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement

Agreement and Release, constituting discrimination, interference, and retaliation toward Doe,

their tenant, who was exercising fair housing rights.  Defendants stated that the rent would

remain the same and there would be no rent increase, and Doe would not have to return an

alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from,

24

*inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

### COUNT VIII:
### HARASSMENT BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.*
### (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

70.    Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

71.     Doe has a disability in the form of:

a.      An actual physical impairment in that Doe has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, reproducing, and social and occupational functioning.

b.      Doe has a record of a disability in the form of a biological condition plausibly of physical origin when Doe's brain neuroanatomy was formed in the womb before birth resulting in Doe's anatomical sex not corresponding with his gender identity.

c.      Doe was perceived or regarded by Defendants as disabled in that they stereotyped him as having a mental impairment.  However, being transgender is *not* a mental disorder.

d.      Alternatively, upon information and belief, Doe has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, reproducing, and social and occupational functioning.

e.      Alternatively, if necessary, Doe alleges that any purported exclusion from the law of Doe's condition – as "transsexualism" or "gender identity disorders not resulting from physical impairments" under the disability discrimination laws, and/or as "transvestism," "transsexualism," and/or "gender identity disorders not resulting from physical impairments" under the fair housing laws – violates equal

protection under the Fifth Amendment to the United States Constitution.  These classifications are invidious and discriminatory.

72.  Defendants subjected Doe to misgendering and harassment from supervisors, including Mary LNU, Robert LNU, and Mr. Woodward, throughout Doe's employment, which constitutes disparate treatment and discrimination on account of actual and/or perceived disability.

73.  Doe was also subjected to misgendering, harassment, and discrimination from his co-employees during employment, on account of actual and/or perceived disability, and the Defendants failed to correct or remedy the problem both in response to Doe's informal and formal complaints about the same.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT IX:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON DISABILITY IN VIOLATION**
**OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED,**
**42 U.S.C. § 12101, *et seq.***
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The**
**Westover Companies; Westover Companies; Westover Property Management Company,**
**LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

74.     Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

75.     Defendants wrongfully terminated/discharged Doe from employment on account of actual and/or perceived disability.

76.     Defendants hired and/or retained individuals who are cisgender and not believed to be disabled, including Ms. Archdeacon, Mr. Sebastiano, and Mr. Jackson.

77.     Defendants refused to rehire Doe and instead provided him a separation and release agreement requesting that Doe release the Defendants from any and all ADA discrimination claims, which Doe specifically rejected.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable

accommodations will be provided for individuals who suffer from gender dysphoria; annual

LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this

matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT X:**
**RETALIATORY DISCHARGE/TERMINATION IN RETALIATION FOR REQUESTS**
**FOR REASONABLE ACCOMMODATIONS DUE TO DISABILITY IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED,**
**42 U.S.C. § 12101,** *et seq.*
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The**
**Westover Companies; Westover Companies; Westover Property Management Company,**
**LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

78.     Plaintiff hereby incorporates by reference each and every paragraph above as if

the same were set forth more fully at length herein.

79.     Defendants terminated/discharged Plaintiff in retaliation for Plaintiff's requests

for reasonable accommodations on account of Plaintiff's disability – including being referred to

by preferred name and pronouns – as described above, and which allegations are incorporated by

reference as if the same were set forth more fully at length herein.

80.     Defendants subjected Doe to intervening antagonism in the form of misgendering,

harassment, and discrimination or disparate treatment on account of disability.

81.     Defendants hired and/or retained individuals who are cisgender, not believed to be

disabled, and who are not believed to have made requests for reasonable accommodations,

and/or engaged in other protected conduct/activity, including Ms. Archdeacon, Mr. Sebastiano,

and Mr. Jackson.

82.     Defendants refused to rehire Doe and instead provided him a separation and

release agreement requesting that Doe release the Defendants from any and all ADA claims,

discrimination claims, and retaliation claims, which Doe specifically rejected.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

### COUNT XI:
### FAILURE-TO-HIRE AND/OR REHIRE BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.*
### (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

83.     Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

84.     Defendants failed to hire and/or rehire Doe on account of retaliation for his requests for reasonable accomodations related to his disability.

85.     Defendants hired and/or retained individuals who are cisgender, not believed to be disabled, and who are not believed to have made requests for reasonable accommodations,

and/or engaged in other protected conduct/activity, including Ms. Archdeacon, Mr. Sebastiano, and Mr. Jackson.

86.     Defendants refused to rehire Doe and instead provided him a separation and release agreement requesting that Doe release the Defendants from any and all ADA claims of discrimination, which Doe specifically rejected.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT XII:**
**FAILURE-TO-HIRE AND/OR REHIRE IN RETALIATION FOR REQUESTS FOR REASONABLE ACCOMMODATIONS DUE TO DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101,** *et seq.*
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

87.     Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

88.     Defendants failed to hire and/or rehire Doe on account of retaliation for his requests for reasonable accomodations related to his disability.

89.     Defendants hired and/or retained individuals who are cisgender, not believed to be disabled, and who are not believed to have made requests for reasonable accommodations, and/or engaged in other protected conduct/activity, including Ms. Archdeacon, Mr. Sebastiano, and Mr. Jackson.

90.     Defendants refused to rehire Doe and instead provided him a separation and release agreement requesting that Doe release the Defendants from any and all ADA claims of discrimination and retaliation, which Doe specifically rejected.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual

LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

## COUNT XIII:
### FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.*
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

91.     Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

92.     Defendants failed to accommodate Doe on account of his disability during his employment, to wit:

a.      Defendants did not respect Doe's requests to be treated consistent with Doe's preferred name and preferred pronouns while employed with the Defendants, verbally from supervisors and co-employees, and in writing from the same.

b.      After Doe corrected his name and pronouns, Doe's supervisor, Robert LNU, then refused to verbally communicate with Doe directly to avoid any need to have to use Doe's preferred name and pronouns.

c.      Defendants did not ensure that Doe received preferred gender-appropriate treatment in terms of what appeared in paperwork including work orders and memos.

d.      Defendants did not provide Doe with a name badge which is preferred and gender-appropriate.

93.     Defendants discharged Doe, and then subsequently failed to hire and/or rehire him, incorrectly believing that the Defendants could not accommodate Doe's requests related to his disability.

94.     Defendants hired and/or retained individuals who are cisgender, not believed to be disabled, and who are not believed to have made requests for reasonable accommodations, and/or engaged in other protected conduct/activity, including Ms. Archdeacon, Mr. Sebastiano, and Mr. Jackson.

95.     Defendants refused to rehire Doe and instead provided him a separation and release agreement requesting that Doe release the Defendants from any and all ADA claims of discrimination, which Doe specifically rejected.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT XIV:**
**DIRECT RETALIATION IN VIOLATION OF THE AMERICANS WITH**
**DISABILITIES ACT ("ADA"), AS AMENDED,**
**42 U.S.C. § 12101, *et seq.***
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The**
**Westover Companies; Westover Companies; Westover Property Management Company,**
**LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

96.    Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

97.    The Defendants subjected Doe to direct retaliation for Doe's protected conduct/activity in the form of his requests for reasonable accommodations, rebuffs of harassment, and complaints about the same to management and/or the Human Resources ("HR") department.

98.    Defendants subjected Doe to direct retaliation from supervisors and co-employees while still employed which was materially adverse.

99.    Defendants subjected Doe to direct retaliation by discharging him, failing to rehire him, and/or failing to hire him, in retaliation for his protected conduct/activity in the form of his requests for reasonable accommodations, rebuffs of harassment, and complaints about the same to management and/or the Human Resources ("HR") department.

100.    Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The

indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; annual LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this matter; to provide a neutral employment reference for Doe; and an apology to Doe.

## COUNT XV:
## RETALIATORY HARASSMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED,
## 42 U.S.C. § 12101, *et seq.*
## (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

101.    Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

102.    The Defendants subjected Doe to retaliatory harassment, in the form of supervisory harassment and a hostile work environment, in retaliation for Doe's protected conduct/activity in the form of his requests for reasonable accommodations, rebuffs of harassment, and complaints about the same to management and/or the Human Resources ("HR") department.

103.    The harassment was severe and/or pervasive, and materially adverse.

104.    Defendants subjected Doe to tangible employment action in the form of dismissal, failure-to-rehire, and/or failure-to-hire.

105.    Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, tips, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation,

embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages;

pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and

equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post

a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all

members of the LGBT community, in that it explicitly prohibits discrimination on account of

gender identity, gender expression, and gender dysphoria; a policy stating that reasonable

accommodations will be provided for individuals who suffer from gender dysphoria; annual

LGBT sensitivity training for all employees; to conspicuously post notice of the verdict in this

matter; to provide a neutral employment reference for Doe; and an apology to Doe.

**COUNT XVI:**
**DISPARATE TREATMENT/DISCRIMINATION BASED ON GENDER IDENTITY,**
**GENDER EXPRESSION, AND/OR GENDER STEREOTYPING, IN VIOLATION OF**
**THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS**
**AMENDED, 42 U.S.C. § 3604(a)-(b) or Sec. 804(a)-(b)**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The**
**Westover Companies; Westover Companies; Westover Property Management Company,**
**LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

106.    Plaintiff hereby incorporates by reference each and every paragraph above as if

the same were set forth more fully at length herein.

107.    Pursuant to 42 U.S.C. § 3604(a)-(b) of the Fair Housing Act, as amended,

prohibits the Defendants from "otherwise mak[ing] unavailable" or "denying" a "dwelling" to

any person "because of . . . sex," and prohibits Defendant from discriminating in the "provision

of services or facilities in connection therewith, because of . . . sex."  42 U.S.C. § 3604(a)-(b).

108.    Defendants intentionally discriminated against and/or subjected Plaintiff to

disparate treatment based on gender identity, gender expression, and/or on account of gender

stereotyping, in violation of § 3604 of the FHA, as amended, and/or the Fair Housing

Amendments Act.  The facts which support this are as follows:

38

109.    Defendants' employee, Mr. Anthony Sebastiano, subjected Doe to discrimination, disparate treatment, and harassment on account of gender identity, not only in Doe's capacity as an employee, but in Doe's capacity as a tenant of Defendants, at all times relevant hereto. Mr. Sebastiano called Doe slurs.  Mr. Sebastiano is believed to have broken into Doe's residence.

110.    Defendants discriminated against Doe on account of his gender identity, and retaliated against Doe on account of his protected conduct/activity, including by:

a.    Subjecting Doe as a tenant and employee to harassment by supervisors, and to a hostile environment from supervisors and co-employees.

b.    Subjecting Doe to harassment as a tenant which included slurs and a break-in of Doe's residence which went unremedied.

c.    Subjecting Doe to disparate treatment and discrimination with respect to services by failing and/or refusing to refer to Doe consistent with Doe's gender identity including preferred name, preferred pronouns, and providing paperwork, work orders, memos, and/or other identification with gender-appropriate name and pronouns.

d.    After Doe complained about the discrimination, the Defendants, who are not only Doe's landlord but his employer, discharged him from employment on account of discrimination, and in retaliation.

e.    Defendants failed to hire and/or rehire Doe, and instead provided him a settlement agreement and release of his discrimination and retaliation claims against them, which stipulated an increase in rent if Doe continued to live on the property, which is a rent increase, or term and condition, proposed to Doe on account of disparate treatment and discrimination due

to gender identity, gender expression, and/or on account of gender stereotyping.

f.    Defendants discharged Doe from employment on the property, failed to hire, and/or failed to rehire him, in order to intimidate Doe, their tenant, from attempting to vindicate his civil rights, in violation of the Fair Housing Act and the Fair Housing Amendments Act.

g.    Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights. Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them. The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights. The Agreement was rejected by Doe.

111.    Defendants failed to adequately train their employees on discrimination and harassment. The training materials provided to Doe regarding discrimination against transgender individuals under the Fair Housing Act were not correct.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all actual economic damages; out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT sensitivity training for all employees.

### COUNT XVII:
### HARASSMENT/HOSTILE ENVIRONMENT BASED ON GENDER IDENTITY, GENDER EXPRESSION, AND/OR GENDER STEREOTYPING, IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED, 42 U.S.C. § 3604(b) [Sec. 804(b)] (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

112.   Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

113.   Doe suffered a hostile environment, or harassment, which amounted to discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b).

114.   The harassment of Doe was severe, pervasive, offensive, and was perpetrated by both supervisory employees and non-supervisory employees of the Defendants.

41

115.    Defendants failed to provide prompt and appropriate action to prevent, correct, and remedy the discrimination and harassment.

116.    Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

117.    Defendants failed to adequately train their employees on discrimination and harassment.  The training materials provided to Doe regarding discrimination against transgender individuals under the Fair Housing Act were not correct.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all actual economic damages; out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination,

anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT sensitivity training for all employees.

### COUNT XVIII:
### INTERFERENCE IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED, 42 U.S.C. § 3617 [Sec. 818] (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

118.    Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

119.    Defendants violated Section 818 of the Fair Housing Act, 42 U.S.C. § 3617, by "interfering with" Plaintiff's use and "enjoyment of a dwelling because of the . . . sex . . . of such person." 24 C.F.R. § 100.400(c)(2).

120.    Defendants' employee, Mr. Anthony Sebastiano, subjected Doe to discrimination, disparate treatment, and harassment on account of gender identity, not only in Doe's capacity as an employee, but in Doe's capacity as a tenant of Defendants, at all times relevant hereto. Mr. Sebastiano called Doe slurs. Mr. Sebastiano is believed to have broken into Doe's residence.

121.    Defendants' employees intimidated Doe, interfered with Doe's use and enjoyment of Doe's dwelling, and harassed Doe, who was not just an employee, but a tenant, including by:

a.    Subjecting Doe as a tenant and employee to harassment by supervisors, and to a hostile environment from supervisors and co-employees.

b.    Subjecting Doe to harassment as a tenant which included slurs and a break-in of Doe's residence which went unremedied.

c.     Subjecting Doe to disparate treatment and discrimination with respect to services by failing and/or refusing to refer to Doe consistent with Doe's gender identity including preferred name, preferred pronouns, and providing paperwork, work orders, memos, and/or other identification with gender-appropriate name and pronouns.

d.     After Doe complained about the discrimination, the Defendants, who are not only Doe's landlord but his employer, discharged him from employment on account of discrimination, and in retaliation.

e.     Defendants failed to hire and/or rehire Doe, and instead provided him a settlement agreement and release of his discrimination and retaliation claims against them, which stipulated an increase in rent if Doe continued to live on the property, which is a rent increase, or term and condition, proposed to Doe on account of disparate treatment and discrimination due to gender identity, gender expression, and/or on account of gender stereotyping.

f.     Defendants discharged Doe from employment on the property, failed to hire, and/or failed to rehire him, in order to threaten, intimidate, coerce, and abuse Doe, their tenant, who was exercising fair housing rights.

g.     Defendants interfered with Doe's employment, and failed to hire and/or rehire him, on account of discrimination and retaliation against Doe, who was not just their employee but their tenant, at all times relevant hereto.

h.     Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with

respect to the proposed Settlement Agreement and Release, constituting interference and retaliation toward Doe, their tenant, who was exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The Agreement was rejected by Doe.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

122.    Defendants failed to adequately train their employees on discrimination and harassment.  The training materials provided to Doe regarding discrimination against transgender individuals under the Fair Housing Act were not correct.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all actual economic damages; out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination,

anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT sensitivity training for all employees.

**COUNT XIX:**
**DISPARATE TREATMENT/DISCRIMINATION BASED ON HANDICAP/DISABILITY IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED,**
**42 U.S.C. § 3604(a)-(b) [Sec. 804(a)-(b)]**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

123.     All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

124.     Plaintiff is considered a "handicapped person," or a person with a disability, under the FHA, as amended.

125.     Defendants intentionally discriminated against and/or subjected Plaintiff to disparate treatment based on actual and/or perceived disability in violation of § 3604 of the FHA, as amended, and/or the Fair Housing Amendments Act.

126.     Defendants' employee, Mr. Anthony Sebastiano, subjected Doe to discrimination, disparate treatment, and harassment on account of actual and/or perceived disability not only in Doe's capacity as an employee, but in Doe's capacity as a tenant of Defendants at all times relevant hereto.  Mr. Sebastiano called Doe slurs.  Mr. Sebastiano is believed to have broken into Doe's residence.

127.     Defendants discriminated against Doe on account of his actual and/or perceived disability, and retaliated against Doe on account of his protected conduct/activity including

rebuffs of misconduct, formal and informal complaints of discrimination and harassment, and/or in retaliation for requests for reasonable accommodations related to Doe's disability.  Defendants discriminated against Doe by:

a.  Subjecting Doe as a tenant and employee to harassment by supervisors, and to a hostile environment from supervisors and co-employees.

b.  Subjecting Doe to harassment as a tenant which included slurs and a break-in of Doe's residence which went unremedied.

c.  Subjecting Doe to disparate treatment and discrimination with respect to services by failing and/or refusing to refer to Doe consistent with Doe's gender identity including preferred name, preferred pronouns, and providing paperwork, work orders, memos, and/or other identification with gender-appropriate name and pronouns.

d.  After Doe complained about the discrimination, the Defendants, who are not only Doe's landlord but his employer, discharged him from employment on account of discrimination, and in retaliation.

e.  Defendants failed to hire and/or rehire Doe, and instead provided him a settlement agreement and release of his discrimination and retaliation claims against them, which stipulated an increase in rent if Doe continued to live on the property, which is a rent increase, or term and condition, proposed to Doe on account of disparate treatment and discrimination due to actual and/or perceived disability.

f.     Defendants discharged Doe from employment on the property, failed to

hire, and/or failed to rehire him, in order to intimidate Doe, their tenant,

from attempting to exercise fair housing rights.

g.     Defendants did not agree to renew Doe as a tenant/resident on the same

terms and conditions as before, and/or otherwise acted against Doe with

respect to the proposed Settlement Agreement and Release, constituting

discrimination, interference, and retaliation toward Doe, their tenant, who

was exercising fair housing rights.  Defendants stated that the rent would

remain the same and there would be no rent increase, and Doe would not

have to return an alleged "pay advance" received at hire, if Doe signed the

agreement releasing Defendants from, *inter alia*, Title VII, ADA, and

PHRA discrimination and retaliation claims against them.  The indication

by Defendants that they would otherwise raise the rent or require payback

of an alleged pay advance, if Doe did not sign the agreement releasing

Defendants from claims of discrimination and retaliation against them,

was materially-adverse and in retaliation for Doe exercising his fair

housing rights.  The Agreement was rejected by Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an

amount in excess of $150,000.00, including damages for any and all actual economic damages;

out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering,

mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants

exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest,

reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief

requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT sensitivity training for all employees.

**COUNT XX:**
**HARASSMENT BASED ON HANDICAP/DISABILITY IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED, 42 U.S.C. § 3604(a)-(b) [Sec. 804(a)-(b)]**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

128.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

129.    Defendants subjected Doe to misgendering and harassment from supervisors, including Mary LNU, Robert LNU, and Mr. Woodward, throughout Doe's employment, and while he was also a tenant, which amounted to housing discrimination and disparate treatment on account of actual and/or perceived disability.

130.    Doe was also subjected to misgendering, harassment, and discrimination from his co-employees during employment, and while he was also a tenant, at all times relevant hereto, on account of actual and/or perceived disability.

131.    The Defendants failed to correct or remedy the problem of misgendering, harassment, and discrimination, both in response to Doe's informal and formal complaints about the same.

132.    Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

133.    Defendants failed to adequately train their employees on discrimination and harassment.  The training materials provided to Doe regarding discrimination against transgender individuals under the Fair Housing Act were not correct.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all actual economic damages; out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender

expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT sensitivity training for all employees.

**COUNT XXI:**
**CAUSE OF ACTION FOR INTERFERENCE AND RETALIATION FOR REQUESTS FOR REASONABLE ACCOMMODATIONOS RELATED TO HANDICAP/DISABILITY IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED, 42 U.S.C. § 3617 [Sec. 818] (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

134.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

135.    Defendants violated Section 818 of the Fair Housing Act, 42 U.S.C. § 3617, by "interfering with" Plaintiff regarding Plaintiff's use and "enjoyment of a dwelling because of the . . . handicap . . . of such person."  24 C.F.R. § 100.400(c)(2).

136.    Section 818 of the FHA, as amended, and/or the FHAA, codified as amended at 42 U.S.C. § 3617, prohibits interference with respect to any of the rights at Sections 3603, 3604, 3605, and 3606.  Section 3604 relates to non-discrimination, and the duty to accommodate, individuals who have a covered disability or handicap.

137.    Defendants' employee, Mr. Anthony Sebastiano, subjected Doe to discrimination, disparate treatment, and harassment on account of actual and/or perceived disability, not only in Doe's capacity as an employee, but in Doe's capacity as a tenant of Defendants at all times relevant hereto.  Mr. Sebastiano called Doe slurs.  Mr. Sebastiano is believed to have broken into Doe's residence.

138.    Defendants' employees intimidated Doe, interfered with Doe's use and enjoyment of Doe's dwelling, and harassed Doe, who was not just an employee, but a tenant, including by:

a.   Subjecting Doe as a tenant and employee to harassment by supervisors, and to a hostile environment from supervisors and co-employees.

b.   Subjecting Doe to harassment as a tenant which included slurs and a break-in of Doe's residence which went unremedied.

c.   Subjecting Doe to disparate treatment and discrimination with respect to services by failing and/or refusing to refer to Doe consistent with Doe's gender identity including preferred name, preferred pronouns, and providing paperwork, work orders, memos, and/or other identification with gender-appropriate name and pronouns.

d.   After Doe complained about the discrimination, the Defendants, who are not only Doe's landlord but his employer, discharged him from employment on account of discrimination, and in retaliation.

e.   Defendants failed to hire and/or rehire Doe, and instead provided him a settlement agreement and release of his discrimination and retaliation claims against them, which stipulated an increase in rent if Doe continued to live on the property, which is a rent increase, or term and condition, proposed to Doe on account of disparate treatment and discrimination due to actual and/or perceived disability.

f.   Defendants discharged Doe from employment on the property, failed to hire, and/or failed to rehire him, in order to threaten, intimidate, coerce, and abuse Doe, their tenant, who had attempted to vindicate his civil rights, in violation of the Fair Housing Act and the Fair Housing Amendments Act.

g.    Defendants interfered with Doe's employment, and failed to hire and/or rehire him, on account of discrimination and retaliation against Doe, who was not just their employee but their tenant, at all times relevant hereto.

h.    Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before constituting interference, and in retaliation for his requests for reasonable accommodations and/or protected conduct/activity, in violation of the Fair Housing Act and the Fair Housing Amendments Act.  Defendants otherwise acted against Doe with respect to the Settlement Agreement and Release constituting interference and/or retaliation on account of Doe exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

139.    Defendants failed to adequately train their employees on discrimination and harassment.  The training materials provided to Doe regarding discrimination against transgender individuals under the Fair Housing Act were not correct.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all actual economic damages; out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT sensitivity training for all employees.

### COUNT XXII:
### FAILURE-TO-ACCOMMODATE OR MAKE REASONABLE MODIFICATIONS FOR HANDICAP/DISABILITY IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED, 42 U.S.C. § 3604(f)(3)(B) [Sec. 804(f)(3)(B)]
### (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

140.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

141.    Defendants failed to provide "reasonable accommodations in rules, policies, practices, or services" to Plaintiff even though such accommodations were "necessary to afford such person equal opportunity to use and enjoy such a dwelling."  See 42 U.S.C. § 3604(f)(3)(B); see also 24 C.F.R. § 100.204.

142.    Defendants failed to accommodate Plaintiff's known disability by:

a.   Defendants did not respect Doe's requests to be treated consistent with Doe's preferred name and preferred pronouns while employed with the Defendants, and while also a tenant, including both verbally from supervisors and co-employees, and in writing from the same.

b.   After Doe corrected his name and pronouns, Doe's supervisor, Robert LNU, then refused to verbally communicate with Doe directly to avoid any need to have to use Doe's preferred name and pronouns. Doe was isolated and excluded as a tenant and employee on account of the fact that management did not want to use his preferred name and pronouns and treat him consistent with his gender identity. Individuals with disabilities often suffer isolation and exclusion as a form of discrimination due to the stigma that exists against them on account of their conditions.

c.   Defendants did not ensure that Doe received preferred gender-appropriate treatment in terms of what appeared in paperwork including work orders and memos.

d.   Defendants did not provide Doe with a name badge which is preferred and gender-appropriate.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all actual economic damages; out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief

requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT community, in that it explicitly prohibits discrimination on account of gender identity, gender expression, and gender dysphoria; a policy stating that reasonable accommodations will be provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT sensitivity training for all employees.

**COUNT XXIII:**
**CAUSE OF ACTION FOR DIRECT RETALIATION IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED, 42 U.S.C. 3617 [Sec. 818]**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

143.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

144.    The Defendants subjected Doe to direct retaliation for Doe's protected conduct/activity, in exercising or attempting to exercise his fair housing rights, which is a cause of action available to be asserted under Section 818 of the FHA, as amended.

145.    The Defendants subjected Doe to direct retaliation for Doe's requests for reasonable accommodations related to his disability – physical impairment and/or gender dysphoria ("GD") – which is a cause of action available to be asserted under Section 818 of the FHA, as amended.

146.    Defendants subjected Doe to materially-adverse retaliation including retaliatory harassment – retaliatory harassment from supervisors, and retaliatory harassment from co-employees, which was severe and pervasive, while Doe was an employee and also a tenant of Defendants.

147.    Defendants subjected Doe to retaliation by discharging him, failing to rehire him, and/or failing to hire him, in retaliation for his protected conduct/activity, including exercising his rights under the fair housing laws and requesting reasonable accommodations.  Defendants' actions were materially adverse.

148.    Defendants did not agree to renew Doe as a tenant/resident on the same terms and conditions as before, and/or otherwise acted against Doe with respect to the proposed Settlement Agreement and Release, constituting discrimination, interference, and retaliation toward Doe, their tenant, who was exercising fair housing rights.  Defendants stated that the rent would remain the same and there would be no rent increase, and Doe would not have to return an alleged "pay advance" received at hire, if Doe signed the agreement releasing Defendants from, *inter alia*, Title VII, ADA, and PHRA discrimination and retaliation claims against them.  The indication by Defendants that they would otherwise raise the rent or require payback of an alleged pay advance, if Doe did not sign the agreement releasing Defendants from claims of discrimination and retaliation against them, was materially-adverse and in retaliation for Doe exercising his fair housing rights.  The Agreement was rejected by Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all actual economic damages; out-of-pocket expenses; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and for Defendants exacerbating Doe's gender dysphoria; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring Defendants to adopt, disseminate, and/or conspicuously post a non-discrimination, anti-harassment, and non-retaliation policy, which is fully inclusive of all members of the LGBT

community, in that it explicitly prohibits discrimination on account of gender identity, gender

expression, and gender dysphoria; a policy stating that reasonable accommodations will be

provided for individuals who suffer from gender dysphoria; and appropriate annual LGBT

sensitivity training for all employees.

### COUNT XXIV:
### WRONGFUL TERMINATION/DISCHARGE BASED ON RACE/COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

149.     All of the foregoing paragraphs are incorporated by reference as if the same were

more fully set forth herein at length.

150.     Plaintiff is Latino/x and a person of color.

151.     Supervisory/managerial employees, Robert LNU, Mary LNU, and Mr.

Woodward, are White, and are not Hispanic.

152.     Defendants repeatedly filled positions including with similarly-situated

White/Caucasian, cisgender employees, including, for example, Ms. Sarah Archdeacon (believed

to have occurred in or around September 2019), instead of Doe.

153.     The separation agreement does propose language that Doe release Defendants

from any and all claims of discrimination and retaliation including under Title VII of the Civil

Rights Act of 1964.  Doe rejected the Agreement.

154.     Doe alleges the mistreatment was due to his race/color, that it would not have

occurred to a White person.  The White supervisors/managerial employees, including Robert

LNU, Mary LNU, and Mr. Woodward, who are White and not Hispanic, did not subject the other

employees who were White, and are not Hispanic, including Doe's co-employees, in the same

discriminatory and hostile manner as they treated Doe, constituting disparate treatment based on race/color.  A motivating factor in the disparate treatment was on account of race/color.

155.    White employees and/or tenants are not subjected to verbal abuse or break-in of their residences, constituting disparate treatment.  Doe was at least in part on account of race or because he is a transgender man of color.

156.    To deny that race/color played a role here in the Defendants' decision-making is to be blind to Doe's true disadvantage in this context – as a transgender man of color – where race is a motivating factor in addition to sex and disability.  Black and Brown people who are transgender suffer racism in today's society.  Race/color was a motivating factor in Doe's discharge.

157.    Alternatively, if necessary, both sex and race motivated Doe's discharge, but race/color did play a motivating factor in Doe's discharge.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, restitution, expectation damages, consequential damages, compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, and costs of suit.

**COUNT XXV:**
**FAILURE-TO-HIRE AND/OR REHIRE BASED ON RACE/COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000_e_, <u>et seq.</u>**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, <u>LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)</u>**

158.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

159.    Plaintiff is Latino/x and a person of color.

160.    Supervisory/managerial employees, Robert LNU, Mary LNU, and Mr. Woodward, are White, and are not Hispanic.

161.    During the subject timeframe, Defendants repeatedly filled positions including with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms. Sarah Archdeacon (believed to have occurred in or around September 2019).

162.    The separation agreement does propose language that Doe release Defendants from any and all claims of discrimination and retaliation including under Title VII of the Civil Rights Act of 1964.  Doe rejected the Agreement.

163.    Doe alleges harassment and mistreatment while employed with Defendants previously, which was due to his race/color, in that it would not have occurred to a White person. The supervisors/managerial employees, including Robert LNU, Mary LNU, and Mr. Woodward, who are White and not Hispanic, did not subject the other employees who were White, and are not Hispanic, including Doe's co-employees, in the same discriminatory and hostile manner as they treated Doe, constituting disparate treatment based on race/color.  A motivating factor in the disparate treatment was on account of race/color.

164.    White employees and/or tenants are not subjected to verbal abuse or break-in of their residences, constituting disparate treatment.  Doe was at least in part on account of race or because he is a transgender man of color.

165.    To deny that race/color played a role here in the Defendants' decision-making is to be blind to Doe's true disadvantage in this context – as a transgender man of color – where

race is a motivating factor in addition to sex and disability.  Black and Brown people who are transgender suffer racism in today's society.  Race/color was a motivating factor in the failure-to-hire and/or rehire Doe.

166.    Alternatively, if necessary, both sex and race motivated the failure-to-hire and/or rehire Doe, but race/color did play a motivating factor.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, restitution, expectation damages, consequential damages, compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, and costs of suit.

### COUNT XXVI:
### HARASSMENT BASED ON RACE/COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.
### (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

167.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

168.    Plaintiff is Latino/x and a person of color.

169.    Supervisory/managerial employees, Robert LNU, Mary LNU, and Mr. Woodward, are White, and are not Hispanic.

170.    Doe alleges harassment and mistreatment while employed with Defendants previously, which was due to his race/color, in that it would not have occurred to a White person. The supervisors/managerial employees, including Robert LNU, Mary LNU, and Mr. Woodward,

who are White and not Hispanic, did not subject the other employees who were White, and are not Hispanic, including Doe's co-employees, in the same discriminatory and hostile manner as they treated Doe, constituting disparate treatment based on race/color.  A motivating factor in the disparate treatment was on account of race/color.

171.    White employees and/or tenants are not subjected to verbal abuse or break-in of their residences, constituting disparate treatment.  Doe was at least in part on account of race or because he is a transgender man of color.

172.    The separation agreement does propose language that Doe release Defendants from any and all claims of discrimination and retaliation including under Title VII of the Civil Rights Act of 1964.  Doe rejected the Agreement.

173.    To deny that race/color played a role here in the Defendants' decision-making is to be blind to Doe's true disadvantage in this context – as a transgender man of color – where race is a motivating factor in addition to sex and disability.  Black and Brown people who are transgender suffer racism in today's society.  Race/color was a motivating factor in the alleged harassment and abuse of Doe.

174.    Alternatively, if necessary, both sex and race motivated the alleged harassment and abuse of Doe, but race/color did play a motivating factor.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, restitution, expectation damages, consequential damages, compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive

damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, and costs of suit.

## COUNT XXVII:
### WRONGFUL TERMINATION/DISCHARGE BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981
### (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

175.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

176.    Plaintiff is Latino/x and a person of color.

177.    Supervisory/managerial employees, Robert LNU, Mary LNU, and Mr. Woodward, are White, and are not Hispanic.

178.    Defendants repeatedly filled positions including with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms. Sarah Archdeacon (believed to have occurred in or around September 2019), instead of Doe.

179.    Doe alleges the mistreatment was due to his race/ancestry, that it would not have occurred to a White person.  The supervisors/managerial employees, including Robert LNU, Mary LNU, and Mr. Woodward, who are White and not Hispanic, did not subject the other employees who were White, and are not Hispanic, including Doe's co-employees, in the same discriminatory and hostile manner as they treated Doe, constituting disparate treatment based on race.  A motivating factor in the disparate treatment was on account of race.

180.    White employees and/or tenants are not subjected to verbal abuse or break-in of their residences, constituting disparate treatment.  Doe was at least in part on account of race or because he is a transgender man of color.

181.     To deny that race played a role here in the Defendants' decision-making is to be blind to Doe's true disadvantage in this context – as a transgender man of color – where race is a motivating factor in addition to sex and disability.  Black and Brown people who are transgender suffer racism in today's society.  Race/color was a motivating factor in Doe's discharge.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, restitution, expectation damages, consequential damages, compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, and costs of suit.

## COUNT XXVIII:
### FAILURE-TO-HIRE AND/OR REHIRE BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981
### (Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)

182.     All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

183.     Plaintiff is Latino/x and a person of color.

184.     Supervisory/managerial employees, Robert LNU, Mary LNU, and Mr. Woodward, are White, and are not Hispanic.

185.     During the subject timeframe, Defendants repeatedly filled positions including with similarly-situated White/Caucasian, cisgender employees, including, for example, Ms. Sarah Archdeacon (believed to have occurred in or around September 2019).

186.     Doe alleges harassment and mistreatment while employed with Defendants previously, which was due to his race, in that it would not have occurred to a White person.  The supervisors/managerial employees, including Robert LNU, Mary LNU, and Mr. Woodward, who are White and not Hispanic, did not subject the other employees who were White, and are not Hispanic, including Doe's co-employees, in the same discriminatory and hostile manner as they treated Doe, constituting disparate treatment based on race.  A motivating factor in the disparate treatment was on account of race.

187.     White employees and/or tenants are not subjected to verbal abuse or break-in of their residences, constituting disparate treatment.  Doe was at least in part on account of race or because he is a transgender man of color.

188.     To deny that race played a role here in the Defendants' decision-making is to be blind to Doe's true disadvantage in this context – as a transgender man of color – where race is a motivating factor in addition to sex and disability.  Black and Brown people who are transgender suffer racism in today's society.  Race was a motivating factor in the failure-to-hire and/or rehire Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, restitution, expectation damages, consequential damages, compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, and costs of suit.

**COUNT XXIX:**
**HARASSMENT BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981**
**(Plaintiff, John Doe v. Defendants, Woodward Properties; Woodward Properties, Inc.; The Westover Companies; Westover Companies; Westover Property Management Company, LP; Star Partners, LP; 151 South Bishop, Inc.; WP Bishop Newco, LLC)**

189.    All of the foregoing paragraphs are incorporated by reference as if the same were more fully set forth herein at length.

190.    Plaintiff is Latino/x and a person of color.

191.    Supervisory/managerial employees, Robert LNU, Mary LNU, and Mr. Woodward, are White, and are not Hispanic.

192.    Doe alleges harassment and mistreatment while employed with Defendants previously, which was due to his race, in that it would not have occurred to a White person.  The supervisors/managerial employees, including Robert LNU, Mary LNU, and Mr. Woodward, who are White and not Hispanic, did not subject the other employees who were White, and are not Hispanic, including Doe's co-employees, in the same discriminatory and hostile manner as they treated Doe, constituting disparate treatment based on race.  A motivating factor in the disparate treatment was on account of race.

193.    White employees and/or tenants are not subjected to verbal abuse or break-in of their residences, constituting disparate treatment.  Doe was at least in part on account of race or because he is a transgender man of color.

194.    To deny that race played a role here in the Defendants' decision-making is to be blind to Doe's true disadvantage in this context – as a transgender man of color – where race is a motivating factor in addition to sex and disability.  Black and Brown people who are transgender suffer racism in today's society.  Race was a motivating factor in the alleged harassment and abuse of Doe.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, restitution, expectation damages, consequential damages, compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, and costs of suit.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff demands judgment in his favor and against Defendants together in a sum greater than $150,000.00, including:

A.      Actual and compensatory damages including, but not limited back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, restitution, expectation damages, consequential damages, any other economic losses, pain and suffering, mental anguish, and severe emotional distress, for the exacerbation of Doe's gender dysphoria, as available under applicable law.

B.      Punitive damages as available under applicable law for Defendants' evil motive and reckless indifference to Doe's protected rights.

C.      Attorneys' fees, costs of suit, and any interest, as available under applicable law.

D.      Defendants must issue a revised non-discrimination, anti-harassment, and non-retaliation policy to all employees.  The policy must explicitly prohibit discrimination on account of "gender identity," "gender expression," and "gender dysphoria," and must clearly state that reasonable accommodations will be provided for individuals who suffer from gender dysphoria.  All such policies must be made applicable to both employees and tenants/residents.

E.      Revised and appropriate LGBT sensitivity training for all of the Defendants' employees including as described more fully above.

F.      A requirement that Defendants provide a neutral employment reference for, and an apology to, Doe.

G.      Any other further relief that this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

**LAW OFFICES OF ERIC A. SHORE**

DATED:  10/14/2020          BY: _____
                            **JUSTIN F. ROBINETTE, ESQUIRE**
                            Two Penn Center
                            1500 JFK Boulevard, Suite 1240
                            Philadelphia, PA 19102
                            Tel:  (215) 944-6121
                            Fax: (215) 944-6124
                            E-mail: JustinR@ericshore.com

                            *Attorney for Plaintiff*